MHN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHIRLEY TAYLOR, ) | |
| ) | |
| Plaintiff, ) | Case No. 09 C 970 |
| ) | |
| v. ) | Magistrate Judge |
| ) | Martin C. Ashman |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Shirley Taylor ("Plaintiff") seeks judicial review of a final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI"). Before this Court is Plaintiff's Motion for Judgment on the Pleadings.[1] The parties have consented to have this Court conduct any and all proceedings in this case, including entry of final judgment. 28 U.S.C. § 636(c); N.D. Ill. R. 73.1(c). For the reasons set forth below, the Court finds that Plaintiff's Motion should be granted in part and denied in part.

---

[1] A motion for judgment on the pleadings, which does not involve extrinsic evidence like an administrative record, is brought pursuant to Fed. R. Civ. P. 12(c). *See Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998). Both the Plaintiff and the Commissioner clearly intend the instant motion to be considered as one for summary judgment under Rule 56, which is the typical practice in cases of this type. Although the Court has not given notice that the motion would be converted into one for summary judgment as required by Fed. R. Civ. P. 12(d), the Commissioner's thorough consideration of the evidentiary record shows that the Commissioner anticipated the use of extrinsic evidence and that no prejudice will result from construing Plaintiff's motion as one for summary judgment.

## I. Procedural History

Plaintiff applied for DIB and SSI on September 19, 2000. (R. 252-54, 452-53.) She alleged her disability commenced on August 3, 2000. (R. 452-53.) The Social Security Commission denied her claim, and Plaintiff requested and was granted a hearing. (R. 167.) After an initial hearing on May 14, 2002, Administrative Law Judge Edward R. Gustafson denied Plaintiff benefits. (R. 164-70.) Thereafter, Plaintiff requested and was granted Social Security Administration's ("SSA") Appeals Council review. (R. 227.) The Appeals Council vacated the decision and remanded. (R. 214.) ALJ Gustafson denied the claim again on February 3, 2005. (R. 164-70.) Following the second Appeals Council remand, Administrative Law Judge Michael Logan ("ALJ Logan") conducted a hearing on January 22, 2007. (R. 47.) Plaintiff, three medical experts, and a vocational expert ("VE"), appeared and testified at the hearing. (R. 47-125.) ALJ Logan denied the claim. (R. 18-46.) After the Appeals Council denied Plaintiff's request for review, his decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff subsequently filed the action before this Court for judicial review of ALJ Logan's decision.

## II. Background

### A. Plaintiff's Background

Plaintiff was born on October 25, 1950 and was forty-nine years old at the onset date of her alleged disability. (R. 45.) As of the time of the most recent hearing, she was fifty-six years old. (R. 55.) Plaintiff has a tenth-grade education and knows how to read and write. (R. 56.) She has not engaged in substantial gainful activity since August 3, 2000 and formerly worked as

a security guard and as a homemaker assisting elderly and disabled individuals with household tasks. (R. 42, 62-64.)

## B. Medical Treatment and Opinions

Plaintiff has the following severe impairments: blindness in her left eye, depression, generalized anxiety, gastritis, lower back pain, fibroid tumors, anemia and hypertension. (R. 45, 133-34, 282-85, 338.) The Court omits a discussion of the majority of the medical issues which are not directly relevant to the instant motion, noting only that the record reflects that Plaintiff suffered from numerous medical problems in 2000 and 2001 and underwent a hysterectomy on February 8, 2001. On February 21, 2001, doctor of internal medicine, Dr. Walter Plascenia, conducted an examination of Plaintiff for the Bureau of Disability Determination Services. (R. 30.) Dr. Plascenia diagnosed Plaintiff with lower back pain, hypertension, gastritis, and loss of vision of the left eye. (R. 374.) An expert medical consultation by Dr. Chansoo Kim followed on April 16, and Dr. Kim concluded that Plaintiff could perform a large range of light exertional work. (R. 385.)

On November 23, 2004, ophthalmologist Dr. David Hillman found that Plaintiff had poor left eye vision as a result of trauma and mild refractive error in the right eye but benefitted from her current glasses. (R. 21.) Based on the exam, Dr. Hillman felt she should have normal visual field measurements. (R. 21.) Pursuant to the Commissioner's request, Dr. Hillman examined Plaintiff again on September 15, 2006, and he determined that Plaintiff had no exertional limitations as a result of her vision. (R. 426.)

More immediately relevant are Plaintiff's numerous problems with mental health issues. On June 1, 2005, Plaintiff reported to the Ambulatory and Community Health Network ("ACHN") that she had panic attacks, difficulty sleeping, and a history of depression. (R. 446.) In September 2005, Plaintiff reported to ACHN that she had been doing well and had not been as depressed or anxious as before. (R. 446.) In January 2006, Plaintiff reported that medications she had been given to treat her depression were helping. (R. 446.) Notes from a March 1, 2006 visit to the Near South Health Center confirm that she had a generalized anxiety disorder. (R. 448.)

On September 15, 2006, psychologist Dr. Robert Prescott conducted a mental status evaluation of Plaintiff. (R. 32.) He concluded that Plaintiff had some mild deficits in memory that were probably related to depression as well as some obsessive thoughts of death. (R. 438.) He assessed that she had moderate limitations in understanding and remembering detailed instructions, carrying out detailed instructions, and making judgments on simple work related decisions. (R. 438.) He noted all moderate limitations were within the category for the ability to respond properly to supervision, coworkers, and work pressures. (R. 438.) Dr. Prescott stated that others are likely to perceive Plaintiff as odd, and that she appeared apprehensive much of the time. (R. 440.)

### C. Residual Functional Capacity

ALJ Logan found that Plaintiff had the residual functional capacity ("RFC") to work without any restrictions on exertion, had a slight limitation in understanding, and had a slight limitation in remembering and carrying out short simple instructions. (R. 39.) ALJ Logan found

Plaintiff had a moderate limitation in understanding and remembering detailed instructions, carrying out detailed instructions, making judgments on simple work related decisions, interacting appropriately with the public, and carrying out activities of daily living. (R. 39.) In support of this finding, ALJ Logan noted that the objective medical evidence did not support Plaintiff's allegations of disabling pain. (R. 41.) ALJ Logan noted that the medical expert witness, Dr. Stevens, testified he was not able to identify any medically determinable impairments. (R. 41.) In social functioning, ALJ Logan found Plaintiff had moderate difficulties. (R. 42.) ALJ Logan noted that Dr. Prescott, the psychologist, had earlier concluded she seemed lonely and had assessed moderate limitations in Plaintiff's ability to interact appropriately with the public. (R. 44.)

ALJ Logan found Plaintiff experienced no episodes of decompensation and found no evidence in the record indicating Plaintiff had any exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration. (R. 44.)

### D. The Third Hearing for Benefits

#### 1. Plaintiff's Testimony

The third hearing for benefits took place in January 2007 and began with Plaintiff's testimony. (R. 49.) She stated that she was fifty-six years old and had a tenth grade education. (R. 55-57.) In addition to testimony concerning her family life and activities of daily living,

Plaintiff also described her struggle with mental health issues. She stated that she gets nervous, anxious, and stressed and that her anxiety began around 1997 or 1998. (R. 80-81.) Plaintiff also testified that her memory loss limits her from working. (R. 69.) She takes medication for depression and anxiety, including the prescription medicines Zoloft and Xanax. (R. 81.)

2. Medical Expert's Testimony

Dr. Gayle Kumchy testified as a psychological expert witness. Dr. Kumchy asked Plaintiff about her difficulty sleeping, and Plaintiff testified that she had difficulty falling asleep and was often tired and irritated. (R. 102-04.) Plaintiff also told Dr. Kumchy she had problems with her concentration and memory. (R. 104.) Dr. Kumchy testified that the record reflected that Plaintiff was treated for depression in 2002. (R. 105.) Dr. Kumchy also reviewed an earlier assessment of Plaintiff done by Dr. Robert Prescott. (R. 434-37.) Dr. Kumchy agreed with the limitations set out in Dr. Prescott's assessment of Plaintiffs mental impairments on her ability to function with moderate limitations. (R. 106.) She would not offer an opinion on whether Plaintiff's medications have maximized her ability to function; instead she deferred to psychiatry or general medicine. (R. 107.) Dr. Kumchy also testified that she presently did not see the apprehension in the Plaintiff that Dr. Prescott had mentioned in his report.[2] (R. 108.)

---

[2] Additional testimony that is not immediately relevant here was also given on medical issues by Dr. Bernard Stevens and Dr. Elise Torczynski. Dr. Torczynski, an ophthalmologist, testified that Plaintiff lost vision in her left eye but that any loss of vision in the right eye would not meet or equal Social Security Listing 2.02, 2.03, or 2.04. Plaintiff does not contest Dr. Torczynski's findings.

### 3. Vocational Expert Testimony

Next, vocational expert Gayle Gianforte ("VE Gianforte") testified as the vocational expert witness. (R. 36.) Her testimony, and the ALJ's question that elicited it, form the basis for part of Plaintiff's objections to the ALJ's decision. According to the VE, Plaintiff worked as a security officer, a job which required good judgment, commonsense, and the ability to use a firearm. (R. 112.) VE Gianforte also testified that Plaintiff had worked as a homemaker which is semi-skilled and is performed at the light level of exertion. (R. 113.) VE Gianforte was asked by the ALJ to assume a hypothetical person forty-nine years of age with a tenth-grade education; monocular vision; no restriction on exertion, but a slight limitation in understanding and remembering simple instructions; and a moderate limitation in understanding and remembering detailed instructions, carrying out detailed instructions, interacting appropriately with the public, interacting appropriately with supervisors, responding appropriately to work pressures in the usual work setting, and responding appropriately to changes in a routine work setting. (R. 114.) ALJ Logan stated that the person had no decompensations. (R. 114.) VE Gianforte testified that this person would not be able to perform the past work of the Plaintiff; however, such an individual would be able to perform unskilled, simple, routine work with minimal pressures not requiring interaction with supervisors or the public. (R. 116.) VE Gianforte also stated that such a person would be able to perform the work of a mail clerk, stock clerk, and order filler. (R. 116.) She testified that in the relevant region of the national economy there were 8,000 order filler jobs, 30,000 stock clerks, and 65,000 mail clerks. (R. 117.)

In a subsequent hypothetical, ALJ Logan asked VE Gianforte to assume that a person would need to take two unannounced breaks throughout the day and miss two days of work a

month consistently. (R. 118.) VE Gianforte testified that these limitations would require an accommodating and sympathetic employer. (R. 118.) Additionally, VE Gianforte testified that the jobs described were consistent with the descriptions of jobs in the Dictionary of Occupational Titles. (R. 119.)

Next, Plaintiff's attorney questioned VE Gianforte, and she agreed that there was stress in unskilled work. (R. 121.) She testified that the jobs she listed were unskilled and low stress but a psychologist would have to determine whether someone has sufficient, internal coping skills to handle stress on any level. (R. 122.) Plaintiff's attorney then directed the question at Dr. Kumchy who testified that a person who had anxiety disorder would have a more difficult time tolerating basic, simple stresses of a job. (R. 123.)

### E. ALJ Findings

In an opinion dated September 19, 2007, ALJ Logan made the following findings of fact:

1. The claimant met the insured status requirements of the SSA through December 31, 2005.

2. The claimant has not engaged in substantial gainful activity since August 3, 2000, the alleged onset date (20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: blindness in left eye, depression, generalized anxiety, gastritis, lower back pain, fibroid tumors, anemia and hypertension (20 C.F.R. § 404.1520(c) and § 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt P, App. 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.026).

5. The claimant is unable to perform any past relevant work. (20 C.F.R. § 416.965).

6. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c) and 416.966).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 3, 2000 through the date of this decision (20 C.F.R. § 404.1520(g) and 416.920(g)).

### III. Standard of Review

This Court will affirm the ALJ's decision if it "is both supported by substantial evidence and based on the proper legal criteria." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Under the substantial evidence standard, this Court views the record in its entirety but does not reweigh the evidence or substitute its judgment for the judgment of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).

In addition, regardless of whether there exists sufficient evidence in the record to support the ALJ's decision, the ALJ is required to "build an accurate and logical bridge" from the evidence to his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)). If the decision does not meet the minimum requirements because it "lacks evidentiary support or is so poorly articulated as to prevent

meaningful review," this Court will remand the case. *Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003).

## IV. Disability Standard

In order to qualify for DIB, a claimant must demonstrate that he is disabled. An individual is considered to be disabled when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if he is unable to do his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy. *Id.* Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A claim of disability is determined under a five-step analysis. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. First, the SSA considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(4)(I). Second, the SSA examines if the physical or mental impairment is severe, medically determinable, and meets the durational requirement. 20 C.F.R. § 404.1520(4)(ii). Third, the SSA compares the impairment to a list of impairments that are considered conclusively disabling. 20 C.F.R. § 404.1520(4)(iii). If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation proceeds to step four.

*Id.* Fourth, the SSA assesses the applicant's RFC and ability to engage in past relevant work. 20 C.F.R. § 404.1520(4)(iv). In the final step, the SSA assesses whether the claimant can engage in other work in light of his RFC, age, education and work experience. 20 C.F.R. § 404.1520(4)(v).

## V. Discussion

Plaintiff asks this Court to reverse the decision of the Commissioner and order that she be considered disabled for purposes of DIB and SSI. Alternatively, she requests that the case be remanded for further proceedings. (Pl.'s Mem. 9.) Plaintiff does not challenge the testimony of the medical experts but instead presents two contentions: (1) the decision does not provide an individualized assessment of the effect her mental limitations had on her ability to work, and (2) the ALJ incorrectly stated her age in his hypothetical to the VE as forty-nine instead of fifty-six.[3] (Pl.'s Mem. 2.)

### A. Plaintiff's Individual Mental Limitation

Plaintiff contends that at step five ALJ Logan did not address the impact of her specific mental limitations on her ability to work. (Pl.'s Mem. 2.) The exact nature of this argument is

---

[3] The Plaintiff asserts only one objection to the ALJ's decision, arguing that it fails to "assess the impact of Ms. Taylor's individual mental limitations" and "incorrectly focuses solely on her age as of the alleged onset date." (Pl.'s Mem. 2.) Like the Commissioner, the Court construes this as two separate objections because the Plaintiff presents different reasons for the two prongs of her claim. The Plaintiff bases her age-related claim on a contention that the ALJ posed an improper hypothetical question to the VE. By contrast, her first claim relating to mental limitations does not involve the ALJ's hypothetical, resting instead on the fact that the ALJ's decision allegedly failed to provide an individualized assessment of her mental condition.

not entirely clear. The Plaintiff does not contend that the record does not adequately support the ALJ's decision, that the ALJ overlooked relevant medical evidence, or that his RFC determination is incorrect. Relying on Social Security Ruling 85-15, however, she argues that the ALJ committed legal error by not providing an "individualized assessment" of her ability to work in light of her mental status. As the Court understands it, Plaintiff's argument is that the decision does not discuss her ability to perform available jobs in a manner that sufficiently accounts for her particular mental condition. The Court notes that Plaintiff has not cited any specific portion of SSR 85-15 or any case authority under that ruling to support her claim.

Social Security Ruling 85-15 states, in part, that a plaintiff with a severe mental disorder may find the demands of a particular job more stressful than would a person without such a limitation. Accordingly, SSR 85-15 requires that "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." SSR 85-15. In this case, the ALJ did so as outlined above, finding that various non-exertional limitations such as difficulties in understanding and carrying out instructions, concentration, persistence, and pace affected the Plaintiff. (R. 25.) As noted, the Plaintiff does not object to the ALJ's RFC determination. The regulation further states:

> Since mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings. Determining whether these individuals will be able to adapt to the demands or "stress" of the workplace is often extremely difficult. This section is not intended to set out any presumptive limitations for disorders, but to emphasize the importance of thoroughness in evaluation on an individualized basis.

SSR 85-15. In the absence of any specific citation to the regulation by the Plaintiff, the Court presumes that she relies on this language to argue that the ALJ was required to provide an individualized assessment of her condition.

The Commissioner argues that, contrary to Plaintiff's claim, the evaluations related to her mental status by Dr. Kumchy and Dr. Prescott *were* individualized mental health assessments and that the ALJ's consideration of them in reaching his decision satisfies SSR 85-15. The Court agrees with this reasoning. The record shows that the ALJ based his decision on the findings of clinical psychologists Dr. Kumchy and Dr. Prescott, both of whom concluded that Plaintiff would manifest, at most, moderate work limitations due to her mental functioning. (R. 44.) Based on Dr. Prescott's mental status evaluation of Plaintiff, the ALJ found that she had some mild deficits in memory that were probably related to depression and a slight limitation in understanding. (R. 43.) ALJ Logan also relied on Dr. Prescott's assessment that Plaintiff had moderate limitations within the category of ability to respond to supervision, coworkers and work pressures in a work setting. (*Id.*) In addition, Dr. Kumchy testified at Plaintiff's hearing that there was a secondary diagnosis of generalized anxiety disorder, and she agreed with the moderate limitations set forth by Dr. Prescott. (*Id.*)

The Plaintiff does not argue that Dr. Kumchy's or Dr. Prescott's evaluations were inaccurate or that the ALJ failed to take them into consideration. Instead, she focuses primarily on an exchange in the hearing between the VE, Dr. Kumchy, and her attorney. When asked by the attorney if some people are less tolerant than others of workplace stress, the VE referred the attorney to the psychologist. In turn, Dr. Kumchy stated that a person with an anxiety disorder "would have a more difficult time tolerating basic simple stresses of a job." (R. 123.)

Plaintiff's reliance on this testimony fails to show why the ALJ committed legal error in reaching his conclusions. The ALJ's decision discusses the evaluations of Dr. Kumchy and Dr. Prescott at considerable length. (R. 42-43.) Indeed, the ALJ considered the very objection the Plaintiff poses in this case by recognizing that persons with anxiety disorders can experience greater work-related difficulties than others. (R. 44.) As he correctly noted, however, "that does not mean a person with anxiety is not able to perform under the simple stress of the job." (*Id.*) Based on expert psychological evidence, the ALJ concluded that despite her limitations, "this claimant who has an anxiety disorder would manifest at most moderate limitations in work relevant areas of mental functioning." (*Id.*) Plaintiff's reliance on Dr. Kumchy's testimony ignores that the psychologist did not say that Plaintiff must avoid stress altogether. The Seventh Circuit has found that a "person can be depressed, anxious, and obese yet still perform full-time work." *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). In this case, the VE considered the non-exertional restrictions posed by the ALJ, and the fact that Dr. Kumchy stated that a person like the Plaintiff might have greater difficulties than others "is simply a true statement with no relation to the jobs actually named by the VE." *Zayed v. Barnhart*, 278 F. Supp.2d 908, 921 (N.D. Ill. 2003).

The Plaintiff does not claim that the ALJ erred in finding moderate limitations based on anxiety. In fact, she relies on his finding to argue that moderate limitations "restrict[ ] the occupational base" available to her. (Pl.'s Mem. 8.) The Plaintiff overlooks, however, that the ALJ and the VE examined her occupational base with these moderate limitations in mind. The ALJ posed hypothetical questions to the VE consistent with the Plaintiff's mental limitations and

then compounded his initial question with the following moderate limitations specifically tailored to address the Plaintiff's mental health limitations:

> Understanding and remembering detailed instructions, carrying out detailed instructions, the ability to make judgments on simple work related decisions. . . Interact appropriately with the public, interact appropriately with supervisors, interact appropriately with coworkers, respond appropriately to changes in a usual work setting, and respond appropriately to changes in a routine work setting. Let me say that the person, this particular hypothetical person has a moderate limitation in activities of daily living, no decompensations, persistence, and pace.

(R. at 115.) VE Gianforte testified that the limitations would be consistent with unskilled simple routine work where the person is not required to interact with the public and there are minimal work pressures.[4] (R. 116.)

Moreover, the ALJ also took into consideration the Plaintiff's own testimony concerning her condition, as well as the medical record that was before him. (R. 21-45.) ALJ Logan found that Plaintiff's anxiety and depression were never serious enough to require hospitalization or even emergency room attention. (R. 43.) ALJ Logan also noted that Plaintiff's anxiety and depression were treated with psychotropic medication such as BuSpar, Zoloft or Xanax and that she reported that these medications helped. (R. 43.) Additionally, ALJ Logan based his decision on Plaintiff's ability to get along well with people in church and go out with her family and friends. (R. 43-44.)

---

[4] Plaintiff does not argue that the ALJ's alleged error in assessing the impact of her mental disabilities should be considered in tandem with his failure to state her correct age to the VE. Like the Court, the Commissioner's Response addresses Plaintiff's objection as essentially two separate issues, and Plaintiff does not argue otherwise in her Reply. Insofar as Plaintiff alleges that the ALJ erred in failing to consider the combined impact of her age and mental health condition, that error will be cured on remand when the ALJ elicits new VE testimony using Plaintiff's correct age.

Based on his consideration of the Plaintiff's testimony, the psychologists' reports, the medical record, and the VE's testimony, the Court finds that the ALJ met the requirements of SSR 85-15 and considered Plaintiff's individual mental impairments. Notably, the Plaintiff does not explain what additional individualized assessment the ALJ was required to undertake in this case. As a result, the Court finds that the ALJ did not commit legal error, that he properly considered the record evidence of Plaintiff's mental health status under SSR 85-15, and that substantial evidence supports the ALJ's decision on this issue.

### B. The ALJ's Characterization of Plaintiff's Age

Next, the Plaintiff contends that the ALJ erred by asking the VE to assume a person who was forty-nine years old instead of one who was fifty-six. Based on the ALJ's hypothetical, the VE determined that there were a substantial number of jobs in the regional or national economy that the Plaintiff would be able to perform. (R. 117.) In reality, however, the Plaintiff was fifty-six at the time of the hearing, not forty-nine. Under the regulations, a person below the age of fifty is considered "younger," while one fifty-five and older is deemed to be a person of "advanced age." 20 C.F.R. § 404.1563.

"Hypothetical questions posed to vocational experts ordinarily must include *all* limitations supported by medical evidence in the record." *Steele*, 290 F.3d at 942. The Seventh Circuit has stressed that this rule is designed to ensure that VE testimony properly accounts for the jobs a claimant can actually perform in light of her limitations. *Id.* An exception exists, however, when a VE independently learns of a limitation the ALJ has failed to include in the hypothetical by, for example, reviewing the medical evidence. *Id*; *see also Ragsdale v. Shalala*,

53 F.3d 816, 818-21 (7th Cir. 1995). That is the case here, the Commissioner argues. Relying on *Kittelson v. Astrue*, 362 Fed. Appx. 553 (7th Cir. 2010), the Commissioner contends that the ALJ's hypothetical was adequate even though it used the incorrect age because the VE was present at the hearing when the Plaintiff testified that she was fifty-six years old.

The Commissioner correctly notes the exception to an ALJ's duty to include all limitations in a hypothetical question, but *Kittelson* does not address the facts of this case. In *Kittelson*, the ALJ's question to the VE was incomplete because it failed to include the claimant's obesity limitation; the Seventh Circuit found this to be harmless error because the medical evidence that was independently available to the VE reflected the obesity issue overlooked by the ALJ. *See Kittelson*, 362 Fed. Appx. at 560; *see also Ragsdale*, 53 F.3d at 818-21 (analyzing incomplete hypothetical questions); *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004). Under these cases and others like them, a VE can *sua sponte* correct a deficient hypothetical by adding relevant information that the ALJ overlooked in the question that was posed.

In this case, however, the Plaintiff does not claim that the ALJ's question was incomplete but that it was overtly inaccurate. Unlike *Kittelson*, *Ragsdale*, and other cases involving omitted information that the VE could have learned from the medical record, the ALJ here directly instructed the VE to consider someone seven years younger than the Plaintiff. While *Ragsdale* allows a VE to supplement an ALJ's deficient hypothetical with overlooked information, it does not directly authorize a VE to substitute his own judgment for the ALJ's by revising the question posed to him. The Commissioner has not argued that *Kittelson* or *Ragsdale* should be extended to include the facts of this case. The Court, therefore, does not address this issue further, noting

only that, contrary to the Commissioner's argument, *Kittelson* is not directly on point with the facts presented here.

Moreover, the Seventh Circuit has emphasized that even where independent medical information is available, "we must have some amount of evidence in the record indicating that the vocational expert knew the extent of the applicant's limitations." *Young*, 362 F.3d at 1003. When an ALJ's hypothetical omits facts, this requirement can be satisfied by a VE's testimony that she has reviewed the record or has heard the claimant's testimony. *Id.* To meet this standard, the record in this case must reflect that the VE ignored the ALJ's clear directive and actually considered a person who was fifty-six instead of forty-nine. The Commissioner does not cite any evidence supporting such a finding, and the Court's independent review of the record does not reveal any ground for concluding that the VE ignored the hypothetical question as it was posed by the ALJ.

Even assuming the VE's testimony was based on a person of advanced age, the Commissioner argues, the error is still harmless. The Commissioner notes that SSR 85-15 provides that if an individual has a large potential occupational base, he or she would ordinarily not be disabled in the absence of extreme adversities in age, education, and work experience. In support, the Commissioner cites Medical-Vocational Guideline ("Grid") 203.12 at Appendix 2 of 20 C.F.R. Pt. 404, Supbt. P, which states that a person of advanced age, and with Plaintiff's work experience and education, is not disabled. The Commissioner's reliance on the Grid, however, is misplaced in this case. When, as here, a claimant has non-exertional limitations, it is inappropriate for an ALJ to rely exclusively on the Grid to determine disability. *Villano v.*

*Astrue*, 556 F.3d 558, 564 (7th Cir. 2009). Instead, the ALJ must consult a VE to determine what jobs the claimant can perform. *Id.*

The ALJ did so in this case, but his incorrect hypothetical gave the VE improper grounds for determining what effect the Plaintiff's age might have on such jobs. The Commissioner fails to note that SSR 85-15 also requires an ALJ to consider whether a claimant can "make a vocational adjustment considering the interaction of his or her remaining occupational base with his or her age, education, and work experience." SSR 85-15. The regulations provide for different vocational adjustments between persons under the age of fifty and those fifty-five and older. For younger individuals, an ALJ does not need take into account whether age will have a serious impact on the claimant's ability to do other work, 20 C.F.R. § 404.1563(c); for claimants like the Plaintiff, "[w]e consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work." 20 C.F.R. § 404.1563(e). Courts require an ALJ to make a specific finding concerning vocational adjustment, *Coletta v. Massanari*, 163 F. Supp.2d 1101, 1105-06 (N.D. Cal. 2001), and the ALJ did so here, stating that the VE's testimony supported a finding that the Plaintiff could make a successful adjustment to other work. (R. 46.) Plaintiff's argument is that the number of jobs available to her are significantly fewer than what the VE stated because of her age-related adjustment difficulties. In light of the ALJ's erroneous hypothetical, however, the VE was not given an opportunity to consider what difficulties, if any, the Plaintiff might experience in vocational adjustment.

As a result, substantial evidence does not support the ALJ's finding that the occupational base available to the Plaintiff was as he stated and was not eroded by the Plaintiff's age. The Court reverses the ALJ's decision on this issue and remands for further proceedings. On remand,

the ALJ shall elicit testimony from the VE using a hypothetical question that reflects the Plaintiff's age at the time of the hearing.

## VI. Conclusion

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings (Dckt. 22) is granted in part and denied in part. Accordingly, this matter is remanded for further proceedings consistent with this opinion.

**ENTER ORDER:**

_[signature]_
**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** November 17, 2010.